IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BENIGNO LOPEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:19 -CV-00378 -MAB |
| | ) |
| KEVIN KINK, ET AL., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on two motions for summary judgment filed by Defendant Brooks (Docs. 43, 44) and Defendants Burle, Garrett, and Kink (Doc. 46). Plaintiff filed one response to the motions for summary judgment (Docs. 49). For the reasons set forth below, the motions will be GRANTED.

## BACKGROUND

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 on April 4, 2019 for deprivations of his constitutional rights while incarcerated at Lawrence Correctional Center ("Lawrence") (Doc. 1, 11). Plaintiff claims that he was denied medical care for injuries he sustained in an inmate attack. After a threshold review, pursuant to 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on one count against Defendants:

> **Count 1:** Eighth Amendment claim against Defendants for exhibiting deliberate indifference to Plaintiff's injuries (including a fractured cheek bone, dizziness, and jaw pain) sustained in the inmate attack on October 6, 2018 (Doc. 11).

Defendant Brooks filed her motion for summary judgment on June 2, 2020, arguing that Plaintiff failed to exhaust administrative remedies before filing this action (Docs. 43, 44). Defendants Burle, Garrett, and Kink filed their motion for summary judgment, arguing similarly, on July 3, 2020 (Doc. 46). Plaintiff filed a response to the motions for summary judgment on July 8, 2020 (Doc. 48). Defendants Burle, Garrett, and Kink filed a reply soon after on July 22, 2020 (Doc. 50). On August 24, 2020, Plaintiff filed a "response" to the reply brief (Doc. 51), which is essentially a sur-reply. This Court's local rules do not allow for sur-reply briefs so the Court need not consider any of the arguments or issues raised in this brief. *See* SDIL-LR 7.1(c) ("Under no circumstances will sur-reply briefs be accepted.").

An evidentiary hearing, pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was held on October 27, 2020 (Doc. 57). Plaintiff was the only witness who testified at the hearing. Plaintiff was provided with an interpreter for the hearing (Doc. 58).

## LEGAL STANDARDS

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A]

judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014).

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. I<span>LL</span>. A<span>DMIN</span>. C<span>ODE</span>, tit. 20, § 504.800, *et seq.* (2017). The regulations first require an inmate to

attempt to resolve the dispute through his or her counselor. *Id.* at § 504.810(a).[1] If the counselor is unable to resolve the grievance, it is sent to the grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (the warden). *Id. at* § 504.830(e). The warden then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the warden's decision, he or she has thirty days to appeal to the Director of the IDOC by sending the grievance to the Administrative Review Board ("ARB"). *Id.* at § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* at § 504.850(d), (e).

An inmate may also request that a grievance be handled as an emergency by forwarding the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840 (2017). If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is handled on an emergency basis, meaning the warden will expedite processing of the grievance and respond to the inmate, indicating what action shall be or has been taken. *Id.* On the other hand, if the warden determines that the grievance should not be handled on an emergency basis, the inmate is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.*

Though the Seventh Circuit requires strict adherence to the exhaustion

---

[1] There are exceptions to this rule, none of which apply here. 20 ILL. ADMIN. CODE § 504.810(a), 504.870 (2017).

requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. *E.g.*, *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

## FACTUAL BACKGROUND

Plaintiff is currently incarcerated at Robinson Correctional Center ("Robinson"), but at the time of the events at the center of this lawsuit, he was incarcerated at Lawrence (Doc. 46, p. 1). On April 16, 2015, Plaintiff participated in the orientation process at Lawrence and was provided with the Lawrence Correctional Center Orientation Manual. He signed for this manual (Doc. 46-1; 50-1). Plaintiff testified that he was not provided the manual in Spanish, his first language, but his cumulative counseling summary details that "Offender participated in Orientation process and was provided with the Orientation Manual. Issued Orientation Manual in Spanish to Offenders with poor English skills. Offenders signed for manuals" (Doc. 46-1, p. 5). Plaintiff signed a form stating he received the orientation manual (Doc. 50-1).

On October 6, 2018, Plaintiff was attacked by another inmate who struck him in the face until he lost consciousness and continued punching him until correctional officers intervened (Doc. 11, p. 2). Plaintiff suffered a fractured cheek bone, lacerations, and bruising that required hospital treatment. *Id.*

After returning to Lawrence from the hospital, Plaintiff was placed in segregation on investigative status. He complained of dizziness and jaw pain, but was not scheduled for a follow-up appointment. *Id.* Plaintiff contends he submitted a Nurse Sick Call request, but received no response. He submitted a second Nurse Sick Call request and was scheduled for an appointment that was canceled. Plaintiff contends that Defendant Brooks failed to check on him, but this is the only mention of Defendant Brooks in Plaintiff's briefing (Doc. 1).

Plaintiff's records indicate that he filed a total of two grievances while housed at Lawrence—one filed on October 29, 2018 and one filed on December 10, 2018 (Doc. 46, p, 2). Plaintiff testified that he submitted a handful, perhaps four to five, additional grievances, but there is no evidence of these grievances in the record. On October 29, 2018, Plaintiff wrote a grievance regarding the aftermath of the assault (Doc. 44-1, p. 15). As a result of this assault, Plaintiff indicated that he suffered a cut to his head, a fractured cheek bone, and non-specific jaw injury. Plaintiff requested "to be treat[sic] right and been taking good medical treatment. Also my rights been protected." *Id.* Plaintiff does not mention any of the Defendants by name in this grievance and does not detail their involvement in this grievance. *Id.*

This grievance was received by Defendant Garrett on October 30, 2018 (Doc. 44-1, p. 15). The grievance was returned to Plaintiff on October 30, 2018. Defendant Garrett informed Plaintiff that his grievance was being returned because it was a request for health care and that Plaintiff must utilize the Nurse Sick Call procedure to get access to health care (*Id.* at 17). Plaintiff asserts that he did not receive this information from

Counselor Garrett because when he received his returned grievance, it did not include his attached memo (Doc. 49, p. 4). As proof, Plaintiff cites to his Cumulative Counseling Summary, in which there is no note or summary about Defendant Garrett returning this grievance (*Id.* at 2; Doc. 44-3, p. 3). The memo is a single sheet of paper with twelve boxes that can be checked by the grievance officer to indicate why the grievance was returned (Doc. 44-1, p. 17). In this case, Defendant Garrett marked the box labeled as "Other: This is a request. To access healthcare, offenders must utilize the Nurse Sick Call procedure outlined in the Lawrence Corr. Cntr Offender Orientation Manual." *Id.*

Plaintiff sent this grievance to the Grievance Officer for second level review on December 6, 2018 (Doc. 44-3, p. 3). The grievance, which was then labeled as Grievance #12-18-108, was returned to Plaintiff because he had not forwarded the counselor's response with his grievance. Plaintiff argues that the prisoner who helped him file his grievances forwarded all of the information they had, which was only the response from Defendant Garrett without the memo attached (Doc. 49, p. 5).

Plaintiff then forwarded this October 29, 2018 grievance directly to the Administrative Review Board, where it was received on December 12, 2018 (Doc. 44-1, p. 14). On December 17, 2018, the grievance was returned to Plaintiff. In the response, the ARB indicated that "(y)our grievance fails to meet DR504.810. Submit your request to medical. If you are denied and do not agree with the Doctor's decision, please complete a grievance and forward to the grievance officer at your facility." *Id.* Plaintiff contends that both Defendants Kink and Burle denied this grievance; however, Defendant Kink's name does not appear to be on the grievance (Doc. 49, p. 2; Doc. 44-1, pp. 14-17).

On December 10, 2018, Plaintiff filed his second grievance, Grievance #12-18-211 (Doc. 1, p. 15). In this grievance, Plaintiff alleged he was not getting healthcare he requested for his injuries. Plaintiff filed this grievance as an emergency grievance, but it was deemed as a non-emergency by Defendant Kink and returned to Plaintiff with instructions to file this grievance in a "normal manner" (Doc. 44-3, p. 2). In this grievance, Plaintiff details the October 6, 2018 assault and his subsequent attempts at receiving medical care. He writes, "I cam[sic] back to the jail and days gone by and I sent out a request slip to health care to get sent to the hospital because my jaw is still messed up. It hurts daily when I talk and eat and it pops" (Doc. 1, p. 15). He states he needs "to get my jaw treated and find out why I'm going light headed." *Id.* Plaintiff contends that to this day, he has not received a response from the ARB for this grievance. He also alleges that he has not received a response from his counselor or a grievance officer (Doc. 49, p. 7). Defendants do not have a record of this grievance reaching the ARB (Doc. 56). The ARB maintains a log of grievances it receives in a log known as the IGRV. Plaintiff's IGRV log shows he submitted one grievance to the ARB in 2018, which was his October 29, 2018 grievance (Doc. 56; Doc. 46-4, p. 1).

While at Robinson, it appears that Plaintiff filed another grievance potentially related to the issues of this case. His grievance, filed on August 15, 2019, pertained to receiving medical treatment for a facial injury (Doc. 44-1, p. 10). He details that on August 13, 2019, he was seen by a Dr. Shah about the injury he sustained at Lawrence (Doc. 44-1, p.12). Plaintiff describes that Dr. Shah refused him medical care and treatment. *Id.* This grievance was denied by Defendant Burle at the ARB because it was determined that the

issue was appropriately addressed by the facility administration as "medical treatment is at the discretion of the provider." *Id.* Plaintiff filed this grievance after he filed this lawsuit on April 4, 2019 and he does not mention any of the current Defendants or provide any details about their actions in this grievance. In the counselor response, the counselor details that Plaintiff had three X-rays taken on or around March 22, 2019, July 29, 2019, and August 16, 2019, all of which do not include evidence of fractures (Doc. 44-1, p. 12).

Plaintiff contends that he was not aware of the grievance procedure because he was not made aware of it in his first language, Spanish, when he was housed at Lawrence (Doc. 49, p. 3). Plaintiff enlisted the help of another inmate to help him file his grievances. *Id.* Plaintiff contends the only time he could fully articulate the issues was when he was able to speak in Spanish to the Mexican Protection Consulate on or around March 9, 2019 (Doc. 49, p. 9; Doc. 46-1, p. 1). He claims the Mexican Protection Consulate's assigned attorney, Daniel Carrera, called the administrators at Lawrence about these issues and then Plaintiff was immediately transferred to Robinson in 2019 (Doc. 49, p. 10). Plaintiff includes a declaration detailing his English level and asserts that he cannot understand English without an interpreter (Doc. 49-1). He filed all of his pleadings in this case with the help of an interpreter and other inmates. When he entered IDOC, he took a basic education test called a "TABE" and scored a grade level of 2.7. *Id.*

## DISCUSSION

Plaintiff argues he was, essentially, thwarted from fully exhausting his administrative remedies prior to filing this lawsuit because of his inability to

communicate in English effectively and because he was not provided with the orientation manual, which details the exhaustion and grievance procedure, in Spanish. Plaintiff argues he had to rely on other inmates and inmate-interpreters to access the grievance procedures and had to put faith in them that they were communicating the necessary details in his grievances. Defendants argue that Plaintiff was provided with the orientation manual in Spanish, that Plaintiff did not go through the appropriate grievance procedures, and, even if he had, that his grievances did not include Defendants' names and/or identifying information to put them on notice of this lawsuit. The Court agrees with Defendants.

The parties agree that there are two main grievances at issue, and a third, filed at Robinson, which may be related to the present matter, but was filed after the start of litigation.

### A. October 29, 2018 Grievance

To summarize the grievance process, an inmate must first attempt to resolve the issue with his counselor. If the counselor cannot resolve the issue, then the grievance is sent to the grievance officer, who issues a report to the warden. The warden then provides a written decision to the inmate, who can appeal to the ARB if he is not satisfied with the result. The ARB has six months from when they receive the grievance to issue a decision to the inmate.

Here, Plaintiff first sent this October 2018 grievance to his counselor, Defendant Garrett, who informed Plaintiff that his grievance was being returned because it was a request for health care and that Plaintiff must utilize the Nurse Sick Call procedure to

access health care. It appears from the record that Plaintiff did not utilize the Nurse Sick Call procedure at this time. Instead, he forwarded this same grievance to the Grievance Officer. The grievance, which was then labeled as Grievance #12-18-108, was returned to Plaintiff because he had not forwarded the counselor's response with his grievance. It logically follows that the Grievance Officer could not review this grievance without more information from the counselor.

Finally, Plaintiff forwarded this October 29, 2018 grievance directly to the Administrative Review Board, where it was received on December 12, 2018 (Doc. 44-1, p. 14). On December 17, 2018, the grievance was returned to Plaintiff. In the response, the ARB indicated that Plaintiff's grievance was related to a medical request and he should submit his request to medical. If he continued to have issues, he could then complete a grievance and forward it to the grievance officer. There is nothing in the record to indicate that Plaintiff followed the ARB's directions.

From the record, it is clear that Plaintiff did not fully exhaust this grievance by going through the appropriate process. In addition, the content of this grievance indicates that he is having a medical issue, not that he is reporting any issues with Defendants Kink, Burle, and Garrett, all of whom do not work in the healthcare unit. While it appears as if Nurse Brooks does work in the healthcare unit, Plaintiff testified that he did not include her name on this grievance and in reviewing the grievance, there are no descriptions or other information that identify issues with the medical care Nurse Brooks provided to Plaintiff. This grievance was not properly exhausted prior to filing this lawsuit.

### B. December 10, 2018 Grievance

On December 10, 2018, Plaintiff filed his second grievance, Grievance #12-18-211 (Doc. 1, p. 15), as an emergency. An inmate may request that a grievance be handled as an emergency by forwarding the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840 (2017). If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is handled on an emergency basis, meaning the warden will expedite processing of the grievance and respond to the inmate, indicating what action will be taken. *Id.*

In this grievance, Plaintiff alleged he was not receiving health care that he requested for his injuries. Plaintiff filed this grievance as an emergency grievance, but it was deemed as a non-emergency by Defendant Kink and returned to Plaintiff with instructions to file this grievance in a "normal manner" (Doc. 44-3, p. 2). In this grievance, Plaintiff details the October 6, 2018 assault and his subsequent attempts at receiving medical care. He writes, "I cam[sic] back to the jail and days gone by and I sent out a request slip to health care to get sent to the hospital because my jaw is still messed up. It hurts daily when I talk and eat and it pops" (Doc. 1, p. 15). He states he needs "to get my jaw treated and find out why I'm going light headed." *Id.*

There is nothing in the record to indicate that Plaintiff refiled this grievance, as instructed by Defendant Kink. Again, this grievance details issues with medical care and not issues with Defendant Kink, Burle, or Garrett, and does not include identifying information that could put those Defendants on notice of this lawsuit. Plaintiff again does

not detail Defendant Brooks' involvement either. This grievance, like his last, was also not properly exhausted prior to filing this lawsuit.

### C. August 15, 2019 Grievance filed at Robinson

While at Robinson, it appears that Plaintiff filed another grievance potentially related to the issues of this case. His grievance, filed on August 15, 2019, pertained to receiving medical treatment for a facial injury (Doc. 44-1, p. 10). This grievance was denied by Defendant Burle at the ARB because it was determined that the issue was appropriately addressed by the facility administration as "medical treatment is at the discretion of the provider." *Id.* Plaintiff filed this grievance *after* he filed this lawsuit on April 4, 2019 and details complaints about Dr. Shah's care, who is not a Defendant in the present matter.

Once a prisoner is moved to a new facility, they may still file a grievance about issues that occurred at their prior facility by appealing directly to the ARB (Doc. 46, p. 7, *citing* 20 Ill Adin. Code 504.870). The issue here is that Plaintiff filed this grievance approximately four months *after* he filed this lawsuit. Additionally, it appears to pertain to the medical care he received from Dr. Shah and is unrelated to the actions of the named Defendants in this matter. For purposes of this lawsuit, Plaintiff did not appropriately exhaust this grievance either.

### D. Plaintiff's Testimony and Response to Defendants' Motions for Summary Judgment

Although the Seventh Circuit requires strict adherence to the exhaustion requirement, *Dole,* 438 F.3d at 809, an inmate is required to exhaust only those

administrative remedies that are available to him. 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. *E.g., Lewis,* 300 F.3d at 833; *Dole,* 438 F.3d at 809. Plaintiff contends that he was thwarted from exhausting his grievances prior to filing this lawsuit due to issues understanding English, which was an argument he *first* asserted in his response to the motions for summary judgment (Doc. 49). Prior to this response, Plaintiff had not brought this issue to the attention of the Court, so a significant portion of the *Pavey* hearing was devoted to better understanding Plaintiff's English-language skills to determine if he was truly thwarted from exhausting administrative remedies.

Plaintiff's testimony was inconsistent throughout the course of the *Pavey* hearing. He gave conflicting accounts of the number of people who assisted him with his grievances and court filings, at first testifying that one person (an inmate who worked in laundry) helped him. He then quickly changed his story to say that multiple inmates helped him file his grievances and the filings in the present matter. Additionally, he described requiring the help of an inmate interpreter to navigate prison systems, including the healthcare unit. If another inmate is unavailable to help him, he relies on gestures to communicate his ailments.

Plaintiff's cumulative counseling summary, however, does not support his assertion regarding his English level and difficulty communicating in the prison. The cumulative counseling summary details Plaintiff's interactions with prison officials. On average, there are monthly to bi-monthly notes about check-ins and meetings that

Plaintiff had with prison officials at his cell door or with his correctional counselor, many of which were face-to-face (Doc. 46-1). In these descriptions, which start in 2016 and go through 2019, there is not a single mention of Plaintiff's inability to communicate in English. In addition, there are no notes describing that prison officials are communicating with Plaintiff in Spanish or, alternatively, in English with the help of an interpreter.

In fact, Plaintiff's cumulative counseling summary outlines that Plaintiff and prison officials communicated about a variety of issues, including transfers (*e.g.*, a note on June 18, 2018 details, "Offender seen at the cell during 60 day contacts, discussed current transfer criteria, if interested in a transfer advised to write a request slip with institution listed, and it would be processed as time allows, no other concerns or issues advised to write a request slip if he needs anything."); his visit list (*e.g.*, a note on July 7, 2016 details, "Offender seen on house rounds, he was on my 60 day contact list. He asked if I had processed his visiting list."); and job opportunities (*e.g.*, a note on September 12, 2018 details, "Offender seen today, discussed job assignments, he is currently waitlisted for HU Porter. Would like to know other jobs he may be eligible for. Will review and reply") (Doc. 46-1, p. 2, 4). Plaintiff was also repeatedly reminded to send request slips if he had any issues or concerns (*e.g.*, a note on July 20, 2018 details, "Seen the offender in the office per his request, discussed his transfer that was submitted for Illinois River C.C., DENIED, discussed about obtaining a job assignment, advised to contact placement with interest, no other concerns or issues, advised to write a request slip if he needs anything.") (Doc. 46-1, p. 2). In the note immediately following the October 6, 2018 incident in which Plaintiff was injured, the cumulative counseling summary details that Defendant Garrett

spoke with Plaintiff at his cell door on November 14, 2018 and recorded, "No issues offered for discussion by ofndr. Requests & grievances provided as needed" (Doc. 46-1, p. 2). Additionally, at the *Pavey* hearing, the Court observed Plaintiff correct his interpreter in English when she incorrectly stated, in English, that he was taking 200 mg of Ibuprofen instead of 800 mg of Ibuprofen. And at the *Pavey* hearing, Plaintiff also acknowledged that he had a Spanish to English dictionary. Based on the record as a whole, it appears that Plaintiff's understanding of English is more advanced than he asserts.

Courts have previously found that when a prisoner who speaks Spanish is not provided with the orientation materials in Spanish, the exhaustion procedures may not be available to them and they cannot be expected to properly exhaust prior to filing a lawsuit. District Courts base their decision on whether existing remedial processes are available and have determined they are *only if* communicated in a way reasonably likely to be understood by the prisoner. *Ramirez v. Young,* 906 F.3d 530, 535 (7th Cir. 2018), *citing Roberts v. Neal*, 745 F.3d 232, 235 (7th Cir. 2014). In *Ramirez,* the prison informed the plaintiff of its grievance procedures in the English version of the orientation manual. Plaintiff's cumulative counseling summary documented that he could not understand oral or written materials in English. At orientation, the prison instructor silenced the prisoner who was translating for the plaintiff. *Ramirez,* 906 F. 3d at 535. Here, unlike in *Ramirez,* there is documentation that Plaintiff was provided with the orientation manual in Spanish. And while there is conflicting information about Plaintiff's abilities to understand and communicate in English, the weight of the information all suggests that

his understanding of English is far more advanced than he lets on. Unlike *Ramirez,* there is no note in Plaintiff's cumulative counseling summary that he cannot understand English or that when interpreters were attempting to inform Plaintiff of the grievance procedure in Spanish, they were silenced. Plaintiff offers only one piece of evidence detailing his inability to understand English, which was his own sworn affidavit (Doc. 49, pp. 12-16).

It is notable that in Plaintiff's check-ins and meetings with prison officials, detailed in the cumulative counseling summary, he did not mention the issues with this current case, including his injured jaw or what he perceived to be a lack of access to medical care. While there are notes about the two grievances he filed, there are no other informal notes about the issues in this case. If Plaintiff is credible in asserting that he was doing everything he could to exhaust administrative remedies prior to filing, it is logical to conclude that he may have mentioned these issues to prison officials, some of whom are named Defendants in this matter, when he had the opportunity to do so. Ultimately, Plaintiff's story is inconsistent and implausible in light of all the record evidence. The documentary evidence all supports the Defendants' position that Plaintiff failed to exhaust his administrative remedies. Accordingly, the Defendant's motions for summary judgment will be granted.

## CONCLUSION

The motions for summary judgment on the issue of exhaustion filed by Defendants (Docs. 43 and 46) are **GRANTED**. This case is **DISMISSED without prejudice** for failure to exhaust. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

IT IS SO ORDERED.

DATED:   October 29, 2020

                                                              s/ Mark A. Beatty
                                                              **MARK A. BEATTY**
                                                              **United States Magistrate Judge**